**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff<br><br>        v.<br><br>DAVIEL SALINAS-ACEVEDO<br><br>    Defendant | **CRIM NO.** 10-342-4(RAM) |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

This matter comes before the Court on Defendant Daviel Salinas-Acevedo's ("Defendant" or "Salinas-Acevedo") *Motion for Compassionate Release and Sentence Reduction to Time Serve [sic].* ("*Motion for Compassionate Release*") (Dockets No. 661). The pending motion is **DENIED WITHOUT PREJUDICE** because Salinas-Acevedo has not shown extraordinary and compelling circumstances meriting compassionate release under 18 U.S.C. § 3582(c)(1).

On September 21, 2010, Defendant was indicted on three counts of a 38-count indictment. He was charged with: (1) Conspiracy to Possess with Intent to Distribute a Controlled Substance, namely five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) ("Count 11"); Attempt to Possess with Intent to Distribute a Controlled Substance, that is, the above-referenced

substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2 ("Count 12"); and Possession of a Firearm in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c) ("Count 14"). (Docket No. 3). A Superseding Indictment was issued on September 30, 2010 but the charges against Defendant remained unchanged. (Docket No. 6). At trial, the jury failed to reach a unanimous verdict as to Count 12 and a mistrial was declared regarding that count. (Docket Nos. 499 at 2; 501 at 2). On January 10, 2013, Defendant was found guilty of Count 11 and Count 14 and was sentenced to prison terms of 121 months and 60 months, respectively, to be served consecutively to each other. (Docket Nos. 501; 555).

On June 2, 2021, Defendant filed his *Motion for Compassionate Release*. (Docket No. 661). Salinas-Acevedo's motion avers he contracted COVID-19 while incarcerated at FCI Manchester in Manchester, Kentucky in late August or early September 2020. Id. at 1. He alleges the Bureau of Prisons ("BOP") provided him with no medical treatment and his facility's health unit "simply allowed [him] to suffer in severe pain and agony for three weeks." Id. He states the BOP declared him "recovered" on September 25, 2020. Id. The BOP documented his alleged recovery, after which he was transferred several times until entering his current facility, FCI La Tuna in Anthony, Texas. Id. at 1-2. While he tested negative for COVID-19 upon entering FCI La Tuna, he contends he still

exhibits long-term symptoms of COVID-19 including fatigue, shortness of breath, headaches, muscle pain and occasional loss of taste and smell, among others. Id. at 2. He claims the BOP's lack of adequate health safeguards prevents him from avoiding crowds of inmates, social distancing or controlling the ventilation in his personal space, making it impossible for him to self-care. Thus, there are compelling reasons warranting his release. Id.

The Government opposed the motion on June 23, 2021, positing that Defendant's request should be denied because he failed to provide evidence of the alleged residual symptoms and he is still a danger to the community. (Docket No. 663). On December 6, 2021, Defendant filed a motion with the Court submitting his immunization record reporting he was fully vaccinated for COVID-19. (Docket No. 671-1).

Typically, a court cannot modify an imprisonment term once imposed. See 18 U.S.C. § 3582(c). But it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A). Prior to passage of the First Step Act in 2018, compassionate release could only be granted upon motion by the Director of BOP. See United States v. Saccoccia, 10 F.4th 1, at *3 (1st Cir. 2021); see also United States v. Stone, 2021 WL 5146183, *5 n.3 (D. Me. 2021). The First Step Act made it possible for motions by defendants if they first apply to the BOP. See Saccoccia, 10 F.4th at 4. Compassionate release on a defendant's

motion requires the District Court find: (a) that "the defendant has presented an 'extraordinary and compelling reason' warranting a sentence reduction" and (b) that said reduction "is consistent with applicable policy statements issued by the Sentencing Commission." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The District Court must then consider any applicable section 3553(a) factors and determine if the reduction "is warranted in whole or in part under the particular circumstances of the case." Id. (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)).

The United States Sentencing Commission's policy statement 1.B.13 concerning compassionate release predates the availability of compassionate release upon a defendant's motion. Id. at 7. Most United States Courts of Appeals have concluded it is not an "applicable" statement confining the courts. Id. at 8 (collecting cases). The First Circuit has not resolved the issue. Id. Yet, district courts within the First Circuit have found it helpful to refer to statement 1.B.13 even if it might not be "conclusive." See Stone, 2021 WL 5146183, at *5 n.3; United States v. Brake, 2021 WL 4555180, at *1 (D. Me. 2021). Per First Circuit precedent, extraordinary and compelling reasons are "(A) medical reasons; (B) age; (C) family circumstances; and (D) '[o]ther [r]easons[.]'" Saccoccia, 10 F.4th at 7 (quoting U.S.S.G § 1B1.13). Even so, the First Circuit assumed for argument's sake in Saccoccia "that a court adjudicating a prisoner-initiated motion for compassionate

release may go beyond the confines of the Sentencing Commission's current policy guidance … in determining whether a particular circumstance or set of circumstances constitutes an extraordinary and compelling reason to grant the motion." Id. at 8. Thus, the Court reviews the *entire* record to find whether Defendant has shown extraordinary and compelling reasons for a sentence reduction. *See* Brake, 2021 WL 4555180, at *1; United States v. Ortiz-Aponte, 2021 WL 1030968, at *3 n.7 (D.P.R. 2021).

Here, as the Government noted in its opposition, Salinas-Acevedo has not provided any medical records whatsoever evincing: (1) that he contracted COVID-19, (2) how the BOP addressed (or failed to address) his diagnosis and (3) the alleged lack of public health safeguards. (Docket No. 663 at 3). Hence, his request solely relies on COVID-19's existence to seek compassionate release. Id. at 9. **This does not suffice.**

"[T]the mere existence of COVID 19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. De Jesus Negron, 498 F. Supp. 3d 275, 277 (D.P.R. 2020) (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). First, Defendant supposedly already contracted COVID-19. (Docket No. 661 at 1). Second, per his own admission, **Defendant is fully vaccinated**

**against COVID-19**, having received the first dose of the Moderna vaccine on June 4, 2021 and the second dose on July 1, 2021. (Docket No. 671-1).

District courts within the First Circuit have explained that "the Moderna vaccine is proven to be '94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected.'" United States v. Beauregard, 2021 WL 2080019, at *8 (D. Me. 2021) (quotation omitted). Salinas-Acevedo's full vaccination status therefore undermines the contention that his health conditions amount to extraordinary circumstances meriting compassionate release. Likewise, courts have typically denied a motion for compassionate release when a defendant has received the COVID-19 vaccine. See United States v. Osorio, 2021 WL 3079865, at *2 (D. Mass. 2021) (citation omitted); see also Stone, 2021 WL 5146183, at *7 (collecting cases).

Moreover, Defendant has failed to show he is at a greater risk of reinfection, or if reinfected, he is at risk of a more severe illness from COVID-19. Multiple district courts have found that a risk of reinfection, standing alone, is insufficient to grant a request for compassionate release. Defendant has not evinced why the Court should rule differently in the case at bar. See United States v. Derden, 2021 WL 3721848, at *2 (D. Minn. 2021) (noting that the Moderna vaccine is not 100% percent effective,

thus there is a small chance that defendant might get reinfected, but still finding that "[t]he risk that [defendant] will (1) be reinfected with COVID-19 or a variant and (2) become seriously ill is … too speculative to justify his release."); United States v. Jose Fernando Lopez-Quevedo, 2021 WL 5303111, at *2 (S.D. Cal. 2021)(denying compassionate release because defendant had gotten COVID-19, failed to proffer medical records reporting his alleged continuing symptoms or on their severity, been fully vaccinated with the Pfizer vaccine and did not claim to have any health condition increasing his risk of complication if he were to be reinfected); Cf. United States v. Sandoval, 2021 WL 673566, at *5 (W.D. Wash. 2021) (granting compassionate release to a defendant who had contracted COVID-19 and been vaccinated with a first dose of the Moderna vaccine because he provided expert testimony showing he was at an increased risk of reinfection due to immunosuppressant drugs he was on after a kidney transplant).

Similarly, **there are no active cases of COVID-19 among inmates at FCI La Tuna, where Defendant is being held**.[1] Thus, it appears the spread of COVID-19 among inmates is under control. See United States v. Alexis, 2021 WL 2333041, at *2 (D. Colo. 2021) (denying request for compassionate release because defendant's facility, FCI La Tuna, had zero COVID-19 cases among inmates and noting that

---

[1]    See    Covid-19    Cases,    Federal    Bureau    of    Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited on December 15, 2021). There are however 8 active cases among the facility's staff.

"[t]he weight of authority thus far underscores the conclusion that extraordinary and compelling circumstances generally do not exist where there are no confirmed cases of the virus at the prisoner's facility.") (citations omitted).

The Court is also not convinced Defendant is not a danger to the community given his drug and firearm convictions and the fact that he has over a year and a half (about 20 months) left in his 121-month sentence. *See* De Jesus-Negron, 498 F. Supp. 3d at 277 (denying a compassionate release request because defendant had not provided any medical records showing he had a pre-existing medical condition making him more susceptible to COVID-19, had about three years left of his sentence and had not shown he was not a danger to society given his drug and firearm convictions); United States v. Sanders, 2020 WL 6460224, at *7 (M.D. Tenn. 2020) (denying a release motion because defendant had not shown he would not be a danger if released given that his "underlying offense—possession of a firearm during a drug trafficking crime—involves the very dangerous mix of drugs and firearms.")

Moreover, Defendant's Count 11 charge carries a mandatory minimum 10-year sentence, whereas the Count 14 charge carries a mandatory minimum 5-year sentence, totaling a minimum of 15 years. (Docket Nos. 526 at 21; 590 at 6). He is scheduled for release on August 14, 2023. (Docket No. 647-1 at 3, 5). **Releasing him now would amount to a reduction of over a year and a half, which would**

**reduce his sentence to below the mandatory minimum and cause a sentence disparity**. *See e.g.*, United States v. Johnson, 2020 WL 7774913, at *4 (W.D. La. 2020) ("A reduced sentence would also cause disparity from sentences other defendants have received for similar criminal conduct, as [defendant] was sentenced to the statutory mandatory minimum sentence of 120 months."); United States v. Sanders, 2020 WL 6460224, at *8-9 (M.D. Tenn. 2020) (noting that while defendant had served a significant part of his sentence, this did not change the fact that the modified sentence he was asking for "would be disparately low compared to others convicted of the same crime, with its ten-year mandatory minimum sentence.") Thus, a sentence reduction at this time would not properly reflect the seriousness of his offense, promote respect for the law, or provide adequate deterrence to criminal conduct as required under 18 U.S.C. § 3553.

Given that extraordinary and compelling circumstances are lacking, Defendant Daviel Salinas-Acevedo's *Motion for Compassionate Release and Sentence Reduction to Time Serve [sic].* (Docket No. 661) is **DENIED WITHOUT PREJUDICE.**

In San Juan, Puerto Rico, this 15th day of December 2021.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge